## A00A1410. WILLIAMS v. THE STATE.
### (540 SE2d 305)

BLACKBURN, Presiding Judge.

Following a jury trial, Zester Williams appeals his conviction of theft by receiving an electronic sound system stolen in a burglary at St. Paul's Missionary Baptist Church in Thomasville, Thomas County, Georgia, in January 1999. We affirm. Williams was also charged and acquitted of the offense of burglary in this incident.

Williams contends that: (1) the trial court erred in refusing to grant a directed verdict as to the theft by receiving count, as the State failed to corroborate defendant's statement to police that he possessed the stolen property in Thomas County; (2) the trial court erred in refusing to grant a directed verdict because the State failed to prove the value of the stolen property was in excess of $500; and (3) the trial court erred in ruling that Williams placed his character in issue and allowing the introduction into evidence of a certified copy of the indictment, plea, and sentence of the previous conviction that placed Williams on probation.

As to the applicable standard of review:

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter for the jury to resolve.

(Citation, punctuation and footnote omitted.) *Yarbrough v. State*.[1] See *Wilson v. State*.[2]

In reviewing cases on appeal, this Court is limited to considering those grounds presented to and ruled upon by the trial court. See *Workman v. State*;[3] *State v. Mayo*;[4] *Godfrey v. State*.[5]

Williams was indicted by the grand jury in Thomas County in

---

[1] *Yarbrough v. State*, 241 Ga. App. 777, 780-781 (4) (527 SE2d 628) (2000).
[2] *Wilson v. State*, 233 Ga. App. 327 (503 SE2d 924) (1998).
[3] *Workman v. State*, 235 Ga. App. 800, 801 (510 SE2d 109) (1998).
[4] *State v. Mayo*, 235 Ga. App. 107 (508 SE2d 475) (1998).
[5] *Godfrey v. State*, 227 Ga. App. 576, 577 (489 SE2d 364) (1997).

Count 1 for the burglary of St. Paul's Missionary Church in said county on or about January 21, 1999. The crime of burglary is codified as OCGA § 16-7-1. He was also charged in Count 2 of said indictment with theft by receiving the subject property in Thomas County on or about January 21, 1999. The crime of theft by receiving is codified as OCGA § 16-8-7.

Under OCGA § 16-8-7, "[a] person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen." Pursuant to OCGA § 16-8-11, when prosecuting charges under OCGA § 16-8-7, "the crime shall be considered as having been committed in any county in which the accused exercised control over the property which was the subject of the theft."

Williams entered a not guilty plea to each of the charges. By pleading not guilty, Williams challenged all allegations contained in the indictment. A not guilty plea requires the State to prove every essential element of the crime with which the defendant is charged. The Georgia Constitution, Art. VI, Sec. II, Par. VI, provides, inter alia, that "all criminal cases shall be tried in the county where the crime was committed."

> [V]enue is an essential element of a criminal charge. When a charging document alleges that venue is proper in a certain county, and a defendant pleads not guilty in response to that charging document, he has irrefutably challenged all allegations contained therein, including those pertaining to venue.

*Graves v. State.*[6]

The record does not reflect that the court took judicial notice that Coolidge is a city in Thomas County or gave any notice that it intended to do so. As concerns judicial notice, however, our Supreme Court has declared that: "[I]f a trial court intends to take judicial notice of any fact, it must first announce its intention to do so on the record, and afford the parties an opportunity to be heard regarding whether judicial notice should be taken." *Graves v. State*, supra at 775 (4) (a).

Our Supreme Court has further held in *Graves*, supra at 776, that *Petkas v. Grizzard*[7] "does not authorize the judicial notice of essential elements of a criminal charge, as they are alleged in prosecutorial pleadings." We note that "[v]enue is a jurisdictional fact that must be proved by the prosecution beyond a reasonable doubt." *Graves*, supra at 773. The State may prove venue through the intro-

---

[6] *Graves v. State*, 269 Ga. 772, 773-774 (1) (504 SE2d 679) (1998).
[7] *Petkas v. Grizzard*, 252 Ga. 104 (312 SE2d 107) (1984).

duction of evidence, legally sufficient to establish that fact. The State could not, however, establish venue in Thomas County *solely* by the introduction of evidence that Williams received, possessed, or controlled the stolen property in Coolidge. The trial court would have been authorized to take judicial notice of the fact that Coolidge is located wholly within Thomas County, if it had chosen to do so and had adhered to the procedural requirements of *Graves*. Thus, venue may be established by the State if the trial court properly takes judicial notice of the relevant facts.

The case proceeded to trial September 27-29, 1999, where the jury acquitted Williams of the burglary charge but convicted him of the charge of theft by receiving stolen property.

Reverend Anderson's testimony authorized the jury to believe that certain electronic sound equipment belonging to the church was stolen during a burglary at St. Paul's Missionary Baptist Church, Highway 319 North, in Thomas County, during the period of January 19-24, 1999. After reporting the matter to the police, Rev. Anderson decided to canvas local pawnshops to see if he could locate the stolen equipment. He located the stolen equipment in nearby Tallahassee, Florida, where Johnny Gelabert, an employee of Folmar Gun & Pawn, matched the serial numbers provided by Rev. Anderson to equipment he had purchased on January 21, 1999. The investigation was turned over to the police, who, based on information provided by Gelabert, determined that Williams had been the individual who had sold the stolen equipment to Folmar Gun & Pawn in Tallahassee on January 21, 1999. Gelabert told police, and testified at trial, that Williams had shown him a picture ID at the time of the sale and that he had a present recollection of the transaction. He showed police the videotape of the transaction. At trial, the videotape was admitted into evidence without objection and played for the jury.

1. We review first Williams' contention that the evidence was insufficient to support his conviction on the theft by receiving charge as the State failed to corroborate defendant's statement to police that he possessed the stolen property in Thomas County.

Williams' argument that the only evidence presented by the State of possession of the stolen equipment by him in Thomas County was his "confession," given to Deputy Walker, is without merit. Williams' written statement was not a confession. He implicitly denied having committed the burglary itself and offered an explanation of his possession of the stolen property which excluded any guilty knowledge of the property having been stolen, if believed. Such a statement is merely an admission of the facts contained therein. " 'A statement which includes facts or circumstances which show excuse or justification is not a confession of guilt even if it admits the main

fact.'" *Robinson v. State*.[8] Williams has never contended that his statement was not voluntary or that it was improperly induced. The State introduced Williams' statement without objection at trial.

Williams' statement was not a confession, but rather, an admission, as it was not so comprehensive as to include every essential element of the offense. See *Johnson v. State*.[9] An admission is the avowal of a fact or of circumstances from which guilt may be inferred, but only tending to prove the offense charged and not amounting to a confession of guilt. While admissions are scanned with care, for what they are worth, along with other evidence, unlike confessions, it is not required that they be corroborated. See OCGA § 24-3-53; *Brown v. State*;[10] *Sheffield v. State*.[11]

However, in addition to his written statement, Williams testified at trial that "[I]'m from Thomas County." Williams and Freddie Johnson, Jr. both lived within walking distance of each other in Coolidge. Several other defense witnesses also lived in Coolidge. Williams' statement and the testimony of Johnson establish that Williams received the stolen property on the morning of January 21, 1999, at Johnson's house. Williams' statement outlines how he went to Johnson's house on the morning of January 21, 1999, to go job hunting. While there, Jose Martinez stopped by and left the stolen equipment in payment of a debt he owed to Derek Davis. Davis, who was in jail, owed Williams some money, and so Williams decided to take the equipment and sell it in satisfaction of Davis' debt. Williams also testified that following the sale of the stolen property, he returned to Thomas County and went home, which he had already testified was in Coolidge. Viewing this evidence in a light favorable to the verdict, the evidence was sufficient to establish venue in the theft by receiving case in Thomas County.

Williams also contends that the State failed to prove the corpus delicti. The State introduced the testimony of Rev. Anderson and Gelabert, as outlined above, to establish the fact that the subject property had been stolen, the value of the stolen property, and possession and control at the time of the sale thereof in Williams. The testimony of Williams and Johnson established that Williams obtained possession of the property in Thomas County. The State was unable to locate Martinez, and there were statements made by Williams to Deputy Walker and to Gelabert which might have caused the jury to reject his story. Contradictory statements by the defendant, coupled with the apparent nonexistence of the person from

[8] *Robinson v. State*, 232 Ga. 123, 126 (2) (205 SE2d 210) (1974).
[9] *Johnson v. State*, 204 Ga. 528 (50 SE2d 334) (1948).
[10] *Brown v. State*, 167 Ga. App. 851 (307 SE2d 737) (1983).
[11] *Sheffield v. State*, 188 Ga. 1 (2 SE2d 657) (1939).

whom he contended he received the stolen property, authorize the jury to find that the defendant received the stolen property with knowledge that it had been stolen. *Austin v. State.*[12] Questions of the credibility of witnesses are reserved for the jury. OCGA § 24-9-80. Knowledge that goods are stolen may well be deduced by the jury from the defendant's conduct and behavior, the character of the person from whom the goods were received, and the nature of the stolen property. In this case, the stolen property was a commercial sound system. *Prather v. State.*[13]

We note that the State incorrectly contends that proof that the burglary occurred in Thomas County establishes venue in that county as to the charge of theft by receiving stolen property. Theft by receiving, however, is not a lesser included offense of the crime of burglary, as the crimes have different elements. See *Nebbitt v. State,*[14] overruled on other grounds, *Coleman v. State.*[15] While theft by taking may be a lesser included offense of the crime of burglary, theft by receiving cannot be as a matter of law. See *Breland v. Smith.*[16] Unlike theft by receiving, burglary involves the unauthorized breaking and entering into a protected structure, with the intent to commit a felony therein. See OCGA § 16-7-1. Therefore, proof that a burglary occurred in Thomas County, standing alone, does not support a finding that the defendant received, possessed, or retained control over the subject property in that county.

The crime of theft by receiving addresses those who buy or receive stolen property, as distinct from the principal thief. See *Sosbee v. State.*[17] As the crime of theft by receiving could have been committed in any county described in OCGA § 16-8-7, the fact that the burglary occurred in Thomas County, standing alone, is not sufficient to prove venue in the theft by receiving case.

The videotape evidence and the testimony of Gelabert demonstrate that Williams possessed and disposed of the stolen stereo equipment in Tallahassee, Florida. The testimony of Rev. Anderson supported the fact that the burglary of St. Paul's Missionary Baptist Church occurred in Thomas County, Georgia, during the period January 19-24, 1999, and that certain church property, having a value in excess of $500, was stolen at that time. This evidence was clearly sufficient to prove venue in Thomas County on the burglary charge. However, because the jury acquitted Williams of the burglary charge,

---

[12] *Austin v. State*, 89 Ga. App. 866 (81 SE2d 508) (1954).
[13] *Prather v. State*, 116 Ga. App. 696 (158 SE2d 291) (1967).
[14] *Nebbitt v. State*, 187 Ga. App. 265 (370 SE2d 1) (1988).
[15] *Coleman v. State*, 271 Ga. 800, 805 (7) (523 SE2d 852) (1999).
[16] *Breland v. Smith*, 247 Ga. 690 (279 SE2d 204) (1981).
[17] *Sosbee v. State*, 155 Ga. App. 196 (270 SE2d 367) (1980).

that point is moot.

Williams contends that the trial court erred in denying his motion for directed verdict at the close of the State's case, as there was no evidence of venue at that time, other than his written statement to police. He contends the State cannot rely upon evidence put up by the defense or the cross-examination of defense witnesses to overcome a failure in the State's case-in-chief. This argument is without merit. In its review, this court must rely on the record of the entire proceeding, including evidence offered by Williams.

As to the evidence reviewed on appeal from an overruled motion for directed verdict made at the close of the State's case, our Supreme Court has held: "[O]n appeal of the overruling of a motion for directed verdict of acquittal made at the close of the state's case in chief, the reviewing court can consider all the evidence in the case in determining whether the trial court erred in overruling the motion." *Bethay v. State.*[18] See *Causey v. State.*[19]

The trial court did not err in denying Williams' motion for directed verdict for failure to prove venue.

2. We next address Williams' contention that the State failed to prove the value of the stolen property was in excess of $500.

Rev. Anderson testified that the value of the stolen sound system was $699 for the mixer, $295 for the amplifier, and $540 for the wireless and that the equipment was approximately four years old. While he testified on cross-examination that those were the original cost figures, he also testified that he had checked prices and that the replacement costs were much higher now. He then testified, on redirect, that it was his opinion that the present value of the equipment was as stated. Gelabert testified that the pawnshop could not purchase the wireless unit because it was missing the power adapter, but that he paid $200 for the remaining two items. Given the nature of the pawn business and the traditionally low sums paid for purchased equipment, and the fact that the wireless, valued by Rev. Anderson at $540, was not part of the purchase, we cannot say that the trial court erred in denying Williams' motion for directed verdict.

Proof of market value is governed by OCGA § 24-9-66. An owner does not have to be an expert to testify as to the value of his property (or that property under his control), provided he has experience or familiarity with such values.

The fact that Rev. Anderson utilizes the equipment routinely, maintains records on the expenses of the church, has checked out the cost of new equipment, and was familiar with the cost and age of the

---

[18] *Bethay v. State*, 235 Ga. 371, 374-375 (219 SE2d 743) (1975).
[19] *Causey v. State*, 154 Ga. App. 525 (267 SE2d 475) (1980).

existing equipment, when coupled with the pawnbroker's testimony, while weak, is sufficient to allow the question to go to the jury. The weight to be given opinion evidence of market value is a matter for the jury. *Gibbs v. Clay*.[20] We cannot say that the trial court erred in its ruling as to proof of value of the stolen equipment.

3. We review Williams' contention that the trial court erred in allowing the State to introduce into evidence a certified copy of the indictment, plea, and sentence of the previous conviction that placed Williams on probation.

Williams elected to testify at trial, and the fact that he was on probation was brought out on direct examination by his own attorney, to show that he had to have permission to go to Florida. In *Jones v. State*,[21] our Supreme Court held that: "Where the defendant testifies and admits prior criminal conduct, he has not placed his character 'in issue' within the meaning of OCGA § 24-9-20 (b). Rather, he has raised an issue which may be fully explored by the State on cross-examination."

The trial court originally limited the State to asking why Williams was on probation, after he had stated that fact to the jury. When the defense informed the court that they would call the probation officer to ask if Williams had permission to go to Florida, the court permitted the State to introduce the complained-of material on cross-examination.

The trial court has broad discretion over cross-examination which will not be interfered with by the appellate court absent an abuse of discretion. Where the defendant initially raises the issue of prior criminal conduct, the State, on cross-examination, is entitled to fully explore such issue. This is especially true under the circumstances herein involved, where the State went no further than to explore the specific conviction which resulted in Williams' present probation. The State provided little information to the jury that had not already been provided by Williams. Under similar circumstances, this Court found that the State was within the scope of a thorough and sifting cross-examination, even as limited by OCGA § 24-9-20 (b). See *Richardson v. State*.[22] We cannot say that the trial court erred in allowing evidence of the prior conviction into evidence under the facts of this case.

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

[20] *Gibbs v. Clay*, 137 Ga. App. 381 (224 SE2d 46) (1976).
[21] *Jones v. State*, 257 Ga. 753, 759 (1) (b) (363 SE2d 529) (1988).
[22] *Richardson v. State*, 173 Ga. App. 695, 696 (327 SE2d 813) (1985).

DECIDED OCTOBER 12, 2000 —

*James R. Newton*, for appellant.
*J. David Miller, District Attorney, Robert R. Auman, Melanie J. Brogden, Andrew W. Pope, Assistant District Attorneys*, for appellee.